IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOSHUA BENEDICT,<br><br>    Petitioner,<br><br>vs.<br><br>WARDEN SHELBIE SMITH,<br><br>    Respondent. | Case No. 1:24-cv-948<br><br>DISTRICT JUDGE<br>DAVID A. RUIZ<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT AND<br>RECOMMENDATION** |

Petitioner Joshua Benedict filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Benedict is in custody at the Belmont Correctional Institution based on a judgment entry issued by the Crawford County Court of Common Pleas, *State v. Benedict*, No. 19-CR-0022AB. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend the Petition be dismissed.

## Summary of Facts

In habeas corpus proceedings brought under 20 U.S.C. § 2254, factual determinations made by the state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals, Third Appellate District, Crawford, County, Ohio summarized the facts underlying Benedict's conviction as follows:

> [*P2] The genesis of this case is Benedict's sexual activity with a minor child, M.P. (in 2015), and his taking of a digital image of her female genitalia with his computer tablet. After M.P. disclosed Benedict's sexual abuse of her in 2018, an investigation commenced and Benedict's tablet was seized. An analysis of that tablet by law enforcement yielded a digital image of M.P.'s genitalia as well as additional contraband (i.e., child pornography) involving minor children.

*State v. Benedict,* 198 N.E.3d 979, 985 (Ohio Ct. App. Oct. 11, 2022).

### Procedural Background

In January 2019, the Crawford County grand jury indicted Benedict on the following 130 criminal charges: two counts of rape in violation of Ohio Rev. Code § 2907.02(A)(1)(b) (counts 1 and 2), one count of gross sexual imposition in violation of Ohio Rev. Code § 2907.05(A)(4) (count 3), two counts of pandering obscenity involving a minor in violation of Ohio Rev. Code § 2907.321(A)(3) (counts 4 and 5), and 125 counts of pandering sexually oriented matter involving a minor in violation of Ohio Rev. Code § 2907.322(A)(5) (count 6 through 130). *See* Doc. 6-1, at 6–47. Counts one through five occurred in 2015 and counts six through 130 occurred in 2018. Doc. 6-1, at 6, 8. Benedict pleaded not guilty to all counts. *Id.* at 49.

*1. Pre-trial motions*

In March 2019, Benedict moved to sever counts 1 through 5 from the remaining 125 counts. *Id.* at 51. In August 2019, after a hearing, the trial court

2

denied Benedict's motion to sever. *Id.* at 62. In November 2019, Benedict moved for reconsideration of the denial of his motion to sever. *Id.* at 65. In January 2020, the trial court denied reconsideration. *Id.* at 77.

In April 2019, and again in September 2019, Benedict moved for a "pretrial taint hearing to determine the reliability" of M.P., who was one of the victims. Doc. 6-1, at 80–103. In October 2019, the trial court denied the motion after a hearing. *Id.* at 105. In January  2020, the trial court denied reconsideration. *See id.* at 107, 117.

In May 2019, Benedict filed a motion to suppress evidence and for a *Franks* hearing.[1] *Id.* at 169. Specifically, Benedict asserted that the affidavits supporting relevant search warrants lacked probable cause and contained false information. *Id.* In October 2019, after a hearing, the trial court denied both Benedict's motion to suppress and his motion for a *Franks* hearing. *Id.* at 193.

In March 2020, Benedict filed a notice of interlocutory appeal, in which he disputed the trial court's ruling that denied his motions to sever and for a pre-trial reliability hearing. *Id.* at 120. The State opposed the interlocutory appeal. *Id.* at 160. Later in March 2020, the court of appeals dismissed Benedict's appeal and held that the appellate court lacked jurisdiction to entertain the interlocutory appeal because the rulings Benedict sought to appeal were not final orders. *Id.* at 167. Benedict did not appeal further.

---

[1]     A *Franks* hearing, named after the United States Supreme Court decision *Franks v. Delaware*, 438 U.S. 154 (1978), involves a challenge to the validity of an affidavit underlying a search warrant.

In March 2021, Benedict filed a motion for a hearing under Ohio Rule of Evidence 702 to challenge the testimony of task force officer Aaron Greenberg, as it related to the extraction of pornographic images from Benedict's device and whether Greenberg's report met the state evidentiary requirements for an expert report. *See id.* at 196, 199. The State objected to the hearing. *Id.* at 204. The court held the matter in abeyance while the parties conducted additional discovery. *Id.* at 212. In April 2021, after supplemental briefing, Benedict withdrew his motion. *Id.* at 487.

In April 2021, the State moved to dismiss counts 5, 13, 17–20, 37, 47, 51–53, 70 and 99–130. *See id.* at 490, 524. The same month State moved to amend counts one through four to enlarge the date of the offenses and to amend counts 71–98 regarding the digital-image evidence. *See id.* at 527, 560. Later in April 2021, the trial court granted the State's motions to dismiss and to amend the indictment. *Id.* at 563–70.

In June 2021, after a jury found Benedict guilty of two counts of rape (counts 1 and 2), one count of gross sexual imposition (count 3), one count of pandering obscenity involving a minor (count 4), and 77 counts of pandering sexual oriented matter involving a juvenile (counts 6–12, 14–16, 21–36, 38-46, 48–50, 54–69, and 71–98), the trial court sentenced Benedict to two consecutive prison terms of 15 years to life plus 60 months with eligibility for parole after a minimum of 35 years. *Id.* at 571.

### 2. Motion for a New Trial

In May 2021, before sentencing, Benedict moved for a new trial based on allegedly newly discovered evidence. Doc. 6-2, at 5. The State opposed his motion. *Id.* at 26. In June 2021, the trial court denied Benedict's motion for a new trial, reasoning that the newly found evidence was not relevant or pertinent to the case. *Id.* at 42.

### 3. Direct Appeal

Benedict, through counsel, appealed to the Third District Court of Appeals. *Id.* at 46. He raised the following assignments of error:

> 1. The trial court erred in denying Appellant's motion to sever Counts 1-5 from Counts 6-98 of the Indictment for purposes of trial depriving him of his constitutional right to a fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.
>
> 2. Appellant's trial counsel was ineffective for failing to properly challenge the search warrants that issued, which were based on affidavits that lacked probable cause and contained false information.
>
> 3. The trial court erred and denied Appellant his constitutional rights secured by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution to cross-examine a witness on bias, prejudice and motive to misrepresent the facts.
>
> 4. The trial court failed to hold a pre-trial taint hearing resulting in the admission of unreliable testimony that was a product of suggestive interrogation, multiple interviews, prompting and manipulation, in violation of Appellant's constitutional rights secured by the Fifth, Sixth, and

5

Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

*Id.* at 70, 79, 82, 84. The State responded in opposition, *id.* at 157, and Benedict filed a reply, *id.* at 226. In October 2022, the court of appeals affirmed the trial court's judgment. *Id.* at 248; *see also Benedict,* 198 N.E.3d at 996.

In October 2022, Benedict filed a motion for reconsideration of the court of appeals' decision. *Id.* at 277. In December 2022, the court of appeals denied Benedict's motion for reconsideration. *Id.* at 287.

In January 2023, Benedict filed a notice of appeal from the court of appeals' decision affirming his judgment and sentence with the Supreme Court of Ohio. *Id.* at 289. Benedict raised the following three propositions of law:

> 1. A Criminal Defendant's Constitutional Right to a Fair Trial is Violated When He is Tried On Two Groups of Charges and the Evidence is Not Simple and Distinct Because it is Extremely Inflammatory and Corroborative of the Other Charges And Would Not Be Admissible As Other-Acts Evidence at Separate Trials.
>
> 2. A Trial Court's Refusal to Hold a Pre-trial Taint Hearing Resulting in the Admission of Unreliable Testimony That was a Product of Suggestive Interrogation, Multiple Interviews, Prompting and Manipulation, Violates a Defendant's Rights Secured by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.
>
> 3. When Trial Counsel Fails to Challenge a Search Warrant Based on an Affidavit that Includes a Broad Time Frame of the Alleged Crime and Includes a Material False Statement as to the Place

> Where Evidence Might Be Found, a Defendant is Denied his Constitutional Right to Effective Assistance of Counsel Under the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

*Id.* at 294. The State filed an opposition. *Id.* at 314. In April 2023, the Supreme Court of Ohio declined under Rule 7.08(B)(4) of its rules of practice to exercise jurisdiction over Benedict's appeal. *Id.* at 322.

In April 2023, Benedict sought reconsideration of the Ohio Supreme Court's decision declining jurisdiction on Proposition of Law 1. *Id.* at 324. In June 2023, the Supreme Court of Ohio denied reconsideration. *Id.* at 331.

### 4. *Federal Habeas Corpus*

In June 2024, Benedict, through counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 1. In his petition, Benedict raises the following grounds for relief:

> **GROUND ONE:** The Petitioner's trial, wherein two (2) separate and distinct issues, separated by a period of approximately three (3) years and different in subject matter was violative of the 5th, 6th and 14th Amendments.
>
> **GROUND TWO:** The Petitioner's 5th, 6th, and 14th Amendment rights were violated when the trial court refused to permit a pretrial taint hearing on the reliability of the alleged victim's statements.
>
> **GROUND 3:** The Petitioner's right to the effective assistance of counsel, guaranteed by the Sixth Amendment was violated when his trial counsel failed to challenge an invalid search warrant.

*See* Doc. 1, at 5–8.

**Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.
L. 104-132, § 104, 110 Stat. 1214 (AEDPA or the 1996 Act), habeas petitioners
must meet certain procedural requirements to have their claims reviewed in
federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th
Cir. 2006). "Procedural barriers, such as statutes of limitations and rules
concerning procedural default and exhaustion of remedies, operate to limit
access to review on the merits of a constitutional claim." *Daniels v. United
States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes
confused with exhaustion, exhaustion and procedural default are distinct
concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to
exhaust applies when state remedies are "still available at the time of the
federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).
But when "state court remedies are no longer available to a petitioner because
he or she failed to use them within the required time period, procedural default
and not exhaustion bars federal court review." *Id.*

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the
petitioner has exhausted all available remedies in state court. 28 U.S.C. §
2254(b)(1)(A); *Robinson v. Horton*, 950 F.3d 337, 343 (6th Cir. 2020). To
exhaust his remedies, a state defendant with federal constitutional claims
must "fairly presen[t]" those claims to the state courts before raising them in

a federal habeas corpus action. *Robinson*, 950 F.3d at 343 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999); *Caver v. Straub*, 349 F.3d 340, 345 (6th Cir. 2003). And a habeas petitioner must "present[] both the factual and legal basis for [the] claims to the state courts." *Hanna v. Ishee*, 694 F.3d 596, 606 (6th Cir. 2012). This means that the "'petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law.'" *Williams*, 460 F.3d at 806 (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)). "'[G]eneral allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present claims" that specific constitutional rights were violated.'" *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017) (quoting *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006)).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to the petitioner's claim and whether the

9

petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see Woolbright v. Crews*, 791 F.3d 628, 631 (6th Cir. 2015) ("When a petitioner has failed to fairly present … claims to the state courts and no state remedy remains, [the] claims are considered to be procedurally defaulted.") (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)). While the exhaustion requirement is technically satisfied in this circumstance because state remedies are no longer available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), a petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

10

To overcome a procedural bar, a petitioner must show "cause for the default and actual prejudice as a result of the alleged violation of federal law," or show that a "fundamental miscarriage of justice" will result if the petitioner's claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

If a state's courts adjudicated the merits of a claim, a habeas petitioner may obtain habeas relief under 28 U.S.C. § 2254, if the petitioner can establish one of two predicates. To establish the first predicate, the petitioner "must identify a 'clearly established' principle of 'Federal law' that" has been established by a holding of the Supreme Court. *Fields v. Jordan*, 86 F.4th 218, 231 (6th Cir. 2023) (en banc); *see* 28 U.S.C. § 2254(d)(1). The petitioner must then show that the state court's adjudication "was contrary to," or "involved an unreasonable application of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1); *see Fields*, 86 F.4th at 232.

To establish the second predicate, the petitioner must show that the state's court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or" based on "a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13

11

(2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n 'unreasonable application of'" the Court's holdings is one that is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

"[A] 'clearly established' principle of 'Federal law'" refers to the "holdings," not "dicta," of the Supreme Court's decisions. *Fields*, 86 F.4th at 231 (quoting 28 U.S.C. § 2254(d)(1) and *Woodall*, 572 U.S. at 419). A state court is not required to cite Supreme Court precedent or reflect an "awareness" of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *see Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

### Discussion

*1.  Ground 1 is not cognizable and meritless.*

As his Ground One, Benedict asserts that the trial court violated his due process rights when it denied his motion to sever. Doc. 1, at 5. Benedict claims that the court of appeals did not analyze whether the introduction during the trial of certain evidence, that he claims constituted "other acts evidence," violated his due process rights. Doc. 10, at 14. He also asserts that the trial court erred when it found that the evidence was simple and direct, Doc. 10, at 11–12, and takes issue with the introduction of "other acts evidence," *id*. at 14.

The court of appeals discussed these arguments after Benedict raised them on direct appeal:

13

{¶16} On appeal, Benedict asserts that there are no grounds to join the offenses against him at trial under Crim.R. 8(A). Specifically, Benedict challenges whether his acts constituted a common scheme or plan. Therefore, we apply a de novo standard of review for this portion of his argument, as opposed to an abuse of discretion, which we discussed above.

{¶17} In our de novo review, we conclude that Benedict's offenses were not misjoined in contravention of Crim.R. 8(A). As we have noted previously, offenses may be joined in a single indictment if they are of the same or similar character, are based on the same act or transaction, are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct. The phrase "of the same or similar character" has been given a broad definition. *See Schaim*, 65 Ohio St.3d at fn. 6, 600 N.E.2d 661 (rejecting Schaim's request for a narrow definition in a case involving charges of forcible rape, sexual imposition, and GSI against three different victims.) Importantly, the offenses "need only be similar in nature, 'not identical in execution.' " *State v. Bennie*, 1st Dist. Hamilton No. C-020497, 2004-Ohio-1264, 2004 WL 535277, ¶ 17-18, quoting *State v. Echols*, 128 Ohio App.3d 677, 708, 716 N.E.2d 728 (1st Dist.1998) (Gorman, J., dissenting). *See also State v. Bass*, 10th Dist. Franklin No. 12AP-622, 2013-Ohio-4503, 2013 WL 5595417, ¶ 9 (concluding that distinctions in the victims, locations, and times of the offenses "do not mean that the [ ] offenses [are] of dissimilar character"). Here, the record before us supports that all of Benedict's charges are of a same or similar character, i.e., sex offenses involving minor children. Hence, we need not reach a determination as to whether the offenses constitute parts of a common scheme or plan. Thus, this portion of Benedict's argument is without merit.

{¶18} Benedict next argues that the trial court erred in denying his motion to sever the 2015 offenses from the 2018 offenses under Crim.R. 14. In particular, Benedict argues that he is prejudiced by joinder due to the inflammatory nature of the digital-image-and-video content in the 2018 offenses. To this portion of Benedict's argument our standard of review is abuse of discretion, as opposed to de novo.

{¶19} Significantly, the evidence used by the State to establish the elements relating to the 2015 and 2018 offenses is simple and direct. Indeed, the crimes charged involved different minor victims, factual scenarios, and witnesses. Moreover, the factual scenario of each set of crimes is easily understood, straightforward, and capable of segregation. At trial, the 2015 and 2018 incidents were presented in an orderly, chronological manner. Even though the crimes were investigated together by law enforcement *after* the discovery of the child-pornography offenses in 2018, there was very little overlap between the two incidents, other than, the use of the instrumentality itself, i.e., Benedict's Samsung computer tablet. *See State v. Echols*, 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138, 2015 WL 8484088, ¶ 17. Hence, we conclude that the evidence presented as to the two sets of offenses was unlikely to confuse jurors or to be improperly considered as corroborative of each grouping of offenses.

...

{¶21} Since we have concluded that the evidence used to establish the elements of Benedict's offenses is simple and direct, we need not address the more stringent "other acts" test. Franklin at 123, 580 N.E.2d 1. See also Lott at 163, 555 N.E.2d 293. Consequently, Benedict cannot establish any prejudice regardless of the admissibility of evidence of other crimes, wrongs, or acts. See Valentine, 2019-Ohio-2243, at ¶ 50. See also Lott at 163, 555 N.E.2d 293.

*Benedict,* 198 N.E.3d at 989–90.

As an initial matter, Benedict never raised this ground to Ohio's courts as a federal constitutional violation. Instead—aside from a vague reference in his court of appeal brief to the "Fifth, Sixth and Fourteenth Amendments to the United States Constitution," Doc. 6-2, at 70—he explicitly relied only on Ohio statutes and rules, *id.* at 70–79, 305–09. This means that Benedict failed the fair presentment requirement. *See Williams*, 460 F.3d at 806; *see also Hand*, 871 F.3d at 418 ("'general allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present claims" that specific constitutional rights were violated'") (quoting *Slaughter*, 450 F.3d at 236.

Further, under Ohio's res judicata rule, because Benedict could have raised this issue on direct appeal, it is now too late for him to raise it now in Ohio's courts. *State v. Szefcyk*, 671 N.E.2d 233, 235 (Ohio 1996) (reaffirming the rule from *State v. Perry*, 226 N.E.2d 104 (1967)). Ohio's courts consistently enforce this rule, *see State v. Cole*, 443 N.E.2d 169, 170–71 (1982), and the Sixth Circuit has held that Ohio's res judicata rule is an adequate and independent state ground on which to procedurally bar review of a habeas claim, *see Coleman v. Mitchell*, 268 F.3d 417, 427–32 (6th Cir. 2001); *see also Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007). So even if this Court were to construe Benedict's first ground as raising an issue of constitutional magnitude, the issue is procedurally defaulted. *See Scott v. Houk*, 760 F.3d 497, 505 (6th Cir. 2014).

16

Further, Benedict's Ground One claim is also not cognizable because he raises it as a state-law claim. Although he states that his rights under "the 5th, 6th and 14th Amendments" were violated, his petition provides nothing beyond this assertion to demonstrate his Ground One claim is premised on a violation of federal law. *See* Doc. 1, at 5 (discussing only the trial court's denial of a motion to sever and related findings by the state court under state evidentiary standards). But simply saying that "due process" or "fair trial" rights were violated is insufficient to raise a federal issue. *See Hand*, 871 F.3d at 418.

Benedict's supporting facts make no explicit argument that the state courts violated his federal constitutional rights. Instead, he simply asserts that the "evidence as presented was not simpl[e] and direct, and independently the materials presented would not have been admissible as Evid. 404(B) evidence." Doc. 1, at 5. So the face of Benedict's petition, like his appellate briefs filed in state court, does not demonstrate that he Ground One claim involves an alleged violation of federal law.

Benedict's responses to the Warden's argument that his Ground One claim is non-cognizable are unpersuasive. As illustrated above, his assertion that "he validly presented a federal claim for review in the state court system" is unfounded. *See* Doc. 10, at 14. Benedict also provides no support for his assertion that the un-severed state court proceedings were fundamentally unfair. *See id.* And to the extent that Benedict attempts to rely on his citation to *Delli Paoli v. United States*, 352 U.S. 232 (1957), to support his argument

17

that he has raised a federal claim, *see* Doc. 10, at 14, his argument fails. First, he didn't cite *Delli Paoli* before Ohio's courts. Second, the first time Benedict cites *Delli Paoli* or argues that the trial court violated clearly established law, is in his Traverse. It is now far too late for Benedict to introduce this argument, even if the case were applicable—which it is not. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) (claims raised for the first time in a traverse are forfeited); *see Rice v. Warden, Warren Corr. Inst.*, 786 F. App'x 32, 38 (6th Cir. 2019).

Even putting the above aside, however, federal courts considering a habeas petition are obligated to defer to a relevant state's court's decision unless a petitioner demonstrates one of two predicates. *See* 28 U.S.C. § 2254(d)(1)–(2). First, he may overcome deference by showing that the state court's adjudication "was contrary to," or "involved an unreasonable application of" "clearly established" precedent. 28 U.S.C. § 2254(d)(1); *see Fields*, 86 F.4th at 232. Second, he could demonstrate that the state's court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Benedict has not made either showing. Although Benedict uses some language that might be reminiscent of the applicable statutory standard—he says that "[t]he Court of Appeals was incorrect"—he does not develop any clear argument that the court of appeals' decision was either contrary to or an

unreasonable application of clearly established federal law, or that the state court's decision was unreasonable based on the evidence presented. *See* 28 U.S.C. § 2254(d)(1)–(2). Instead, Benedict's arguments are generally a recitation of the arguments he raised in his memorandum in support of jurisdiction to the Ohio Supreme Court, complete with citation to that very memorandum. *See* Doc. 10, at 12–14 (citing the state court record citation to his state court briefing). This Court, however, does not act as another level of appeal for Benedict to rehash claims rejected by the state courts. *See Linger v. Akram*, 23 F. App'x 248, 252 (6th Cir. 2001) ("A federal habeas court does not sit as a traditional appellate review with supervisory power to correct general errors committed by a state authority; rather, it has power only to accord relief for *constitutional violations*.") (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).

Beyond his citation to state court briefing, Benedict cites one Supreme Court case, *Delli Paoli*, which he claims was violated by the admission of video and photographic evidence, which he calls "other acts evidence." Doc. 10, at 14. Benedict's reliance on *Delli Paoli* seems to indicate that his is trying to show that the court of appeals' decision is contrary to clearly established federal law. *See Williams*, 529 U.S. at 412–13 ("Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or" based on "a set of *materially indistinguishable* facts.")

(emphasis added). Benedict's argument that the court of appeals violated clearly established federal law fails, however, because *Delli Paoli* is distinguishable in at least the following three respects.

First, *Delli Paoli* concerned a challenge brought by one defendant, out of five defendants jointly tried in a single case, who contested the use of an admission made by a separate defendant in that joint trial. *See* 352 U.S. at 233. In Benedict's case, by contrast, the trial court decided not to have separate trials in a matter involving a single defendant who is charged with dozens of counts, all concerning, to various degrees, "sexual abuse of minor children." *See e.g.*, Doc. 10, at 12.

Second, in *Delli Paoli*, the Supreme Court upheld the trial court's decision to admit the co-conspirator's admission because the trial court properly instructed the jury about how it could appropriately consider that admission to the extent that it mentioned the petitioner. 352 U.S. at 240–42. Here, as the court of appeals recognized, "the record reveals that the trial judge instructed the jury to consider each count, and the evidence applicable to each count, separately." Doc. 6-2, at 259. And, though Benedict makes no argument that the jury failed to comply with the trial judge's instruction, the court of appeals explicitly found "no indication that the jury disregarded the trial court's instruction, or demonstrated confusion concerning the offenses and evidence presented." *Id*. So even setting aside the distinguishing facts between Benedict's case and *Delli Paoli*, the court of appeals' decision illustrates that

20

the trial court did what the Supreme Court endorsed by giving a limiting instruction to the jury. *See* 352 U.S. at 241–43.

Third, *Delli Paoli* says nothing about the use of video or photographic evidence admitted to support some, but not all, charges against an individual defendant in a single trial or that use of such evidence would mandate severance of some counts. *Delli Paoli*, at best—at least in relation to Benedict's argument—held that the choice to sever trials is "a choice [that] turns on the circumstances of the particular case and lies largely within the discretion of the trial judge." 352 U.S. at 243. So it is not clear why Benedict relies on it. Indeed, it does not show that the court of appeals violated clearly established federal law.

In sum, Benedict has not shown that there is clearly established federal law applicable to his case, let alone that the court of appeals decision was contrary to or an unreasonable application of clearly established federal law. *Williams*, 529 U.S. at 412–13.

For all of the reasons stated, Benedict's Ground One claim should be rejected.

> *2. Ground Two is procedurally defaulted, not cognizable, and meritless.*

As his Ground Two claim, Benedict argues that he was entitled to a pre-trial "taint" hearing to contest the reliability of the minor victim's testimony. Doc. 1, at 7. In support, opines that the victim's testimony was unreliable, based on risk of suggestibility from "repetitive questioning" by the victim's

mother and a case worker. *Id.* Benedict also asserts that the victim did not have "personal knowledge" of the subject of her testimony. *Id.* Generally, the Warden's responsive argument is that Benedict's claim is procedurally barred by Ohio's contemporaneous objection rule. *See* Doc. 10, at 19.

Review of the court of appeals' decision shows that, as the Warden asserts, it applied Ohio's contemporaneous-objection rule to this claim. *See* Doc. 6-2, at 266–69. Ohio's long-standing contemporaneous objection rule requires a party to make a contemporaneous objection to an alleged trial error to preserve the error for appellate review. *See, e.g., State v. Murphy*, 747 N.E.2d 765, 788 (Ohio 2001). When an Ohio court applies plain error review, it enforces an independent and adequate state ground that precludes federal habeas review. *Scott v. Mitchell*, 209 F.3d 854, 866–71 (6th Cir. 2000). And the state court's plain error review "does not constitute a waiver of the state's procedural default rules and resurrect the issue." *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012) (quoting *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006)).

In his Traverse, Benedict does not contest that the court of appeals applied Ohio's contemporaneous-objection rule or that it constitutes an adequate and independent state law ground for denying review of a federal constitutional claim. *See* Doc. 10, at 15. Nor could he. Instead, Benedict jumps straight to arguing that he "is still entitled to the cause and actual prejudice analysis relating to this claim, and he is more than able to demonstrate cause

and actual prejudice." Doc. 10, at 16; *see Coleman*, 501 U.S. at 750 (explaining that to overcome a procedural bar, a petitioner must show "cause for the default and actual prejudice as a result of the alleged violation of federal law," or show that a "fundamental miscarriage of justice" will result if the petitioner's claims are not considered). Oddly, however, Benedict makes no attempt to show cause. *See* Doc. 10, at 16–18. So he has forfeited any argument that he could show cause. And without a showing of cause, there is no need to discuss prejudice. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) ("Since both cause and prejudice must be shown to excuse a procedural default, the failure to establish cause eliminates the need to consider prejudice.").

Benedict seems to argue that he can avoid the state court's application of a procedural bar because he "is able to demonstrate his innocence[.]" Doc. 10, at 16. But other than saying it, he provides no support for the assertion that he is actually innocent, let alone the requisite "new reliable evidence." *See Schlup v. Delo*, 513 U.S. 298, 324 (1995) (explaining that a claim of actual innocence "requires the petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial"); *see also McCray v. Tanner*, No. 18-2001, 2024 WL 3443413, at *9 (6th Cir. July 17, 2024) ("The 'actual-innocence' standard that McCray must satisfy here is among the most demanding in federal law."), *cert. denied*, 145 S. Ct. 1203 (2025). As a result, Benedict fails to demonstrate that

23

his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Even ignoring the above, Benedict's argument would fail. The court of appeals determined that his  motion to the trial court amounted to a motion in limine to determine the reliability of statements made in advance of trial. Doc. 6-2, at 266. As such state law required Benedict to contemporaneously object to the challenged testimony during trial to preserve the issue for appeal, absent plain error. *See* Doc. 6-1, at 80; Doc. 6-2, at 265–67. To this end, the court of appeals explained:

> {¶36} " 'A motion in limine is defined as "[a] pretrial motion requesting [the] court to prohibit opposing counsel from referring to or offering evidence on matters so highly prejudicial to [the] moving party that curative instructions cannot prevent [a] predispositional effect on [the] jury." ' " *State v. Wild*, 2d Dist. Clark No. 2009 CA 83, 2010-Ohio-4751, 2010 WL 3821852, ¶ 27, quoting *State v. French*, 72 Ohio St.3d 446, 449, 650 N.E.2d 887 (1995), quoting Black's Law Dictionary 1014 (6th Ed.1990). "A ruling on a motion *in limine* reflects the court's anticipated treatment of an evidentiary issue at trial and, as such, is a tentative, interlocutory, precautionary ruling." (Emphasis  sic.) *French* at 450, 650 N.E.2d 887. "The established rule in Ohio is that the grant or denial of a motion in limine is not a ruling on the evidence." *State v. Thompson*, 3d Dist. Union Nos. 14-04-34 and 14-04-35, 2005-Ohio-2053, 2005 WL 1004767, ¶ 26, citing *State v. Grubb*, 28 Ohio St.3d 199, 200-201, 503 N.E.2d 142 (1986). "In deciding such motions, the trial court is at liberty to change its ruling on the disputed evidence in its actual context at trial." *Defiance v. Kretz*, 60 Ohio

St.3d 1, 4, 573 N.E.2d 32 (1991). Accordingly, "[f]inality does not attach when [a motion in limine] is granted." *Id.*, citing *Grubb* at 201-202, 503 N.E.2d 142.

{¶37} In order to preserve for appeal any error in the trial court's resolution of a motion in limine, the objecting party must "seek the introduction of the evidence by proffer or otherwise" at trial "to enable the court to make a final determination as to its admissibility." *Grubb* at paragraph two of the syllabus. *See State v. Brown*, 38 Ohio St.3d 305, 528 N.E.2d 523 (1988), paragraph three of the syllabus ("A denial of a motion *in limine* does not preserve error for review. A proper objection must be raised at trial to preserve error."). Then, "[a]n appellate court will * * * review the correctness of the trial court's ruling on the objection rather than the ruling on the motion in limine." *Wild* at ¶ 29, citing *State v. White*, 4th Dist. Gallia No. 95CA08, 1996 WL 614190, *3 (Oct. 21, 1996) and *Wray v. Herrell*, 4th Dist. Lawrence No. 93 CA 08, 1994 WL 64293, *3 (Feb. 24, 1994).

{¶38} In our review of the record, we construe Benedict's pretrial-taint motion to be the functional equivalent of a motion in limine since Benedict sought a pretrial-admissibility determination by the trial court as to the reliability of M.P.'s testimony. (*See* Doc. No. 50). Hence, given the nature of the such a motion is tentative, interlocutory, or precautionary, we review the record to determine if there was " ' "a contemporaneous objection at trial[ ]" ' ". *Bagley*, 2014-Ohio-1787, at ¶ 53, quoting *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 59, quoting *State v. Hill*, 75 Ohio St.3d 195, 203, 661 N.E.2d 1068 (1996). Crucial to Benedict's argument under this assignment of error is the fact that the defense did *not* object to *any* statements made by M.P.'s during her testimony. (Apr. 28, 2021 Tr. at 576-623). Therefore, our review of this assignment of error is limited to plain error. *See* Crim.R. 52(B).

*Benedict,* 198 N.E.3d at 993.

Instead of demonstrating cause or prejudice to excuse his default, Benedict provides a description of the facts he views as supporting his position—only some of which are supported by record citation. *See* Doc. 10, at 16. From these factual assertions, Benedict asks the Court to accept the proposition that: "[i]f [the victim] was fed or lead to specific answers, which directly contributed to the convictions for Counts 1-4, and said answers were tainted and should have been excluded, prejudice would have been established." *Id.* The Court declines Benedicts invitation to entertain what amounts to a hypothetical, unsupported assertion, particularly because it is not apparent why doing so would be appropriate. Indeed, Benedict has done nothing to show that, putting his default aside, he could meet the standard in 28 U.S.C. § 2254(d). And his failure to try must necessarily mean that he has not carried his burden to show that the court of appeals decision ran afoul of Section 2254(d).

So, Benedict's Ground Two is procedurally barred.

Additionally, Benedict's Ground Two claim is not cognizable. "[E]rrors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus." *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983); *see Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (a federal habeas court does not "reexamine state-court determinations on state-law questions," including the admissibility of evidence). "When an evidentiary

26

ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). To rise to the level of a due process violation, a state-court evidentiary ruling must "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996), in turn quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)).

Benedict apparently does not dispute the Warden's position that his Ground Two claim amounts to a non-cognizable, state court evidentiary ruling. *See* Doc. 6, at 23. Instead, he argues that the denial of a pre-trial "taint hearing" in his case was fundamentally unfair. *See* Doc. 10, at 17 (arguing that a pre-trial hearing was required because Benedict disputed the reliability of the witness's testimony); *see also* Doc. 6, at 24 (arguing that there were sufficient safeguards of fairness). Benedict claims that the victim was previously questioned by the Sheriff after "discussing the matter repeatedly with her parents in a leading fashion." *Id.* While this is true, it does not support his argument that it was fundamentally unfair for the trial court to deny his motion for a pre-trial hearing. In fact, as the Warden indicated, the State introduced a video recording of the victim's interview with children's services and both the victim and the victim's mother testified during the trial. *See* Doc. 6, at 24.

27

Benedict does not respond to the Warden's assertion that there were sufficient procedural safeguards to ensure the fairness of his trial. *See* Doc. 6, at 24 (describing the "safeguards [that] ensures the fairness of the trial."). Likewise, Benedict points to no case or other support to show as a baseline that the denial of a hearing on Benedict's motion was fundamentally unfair. Relatedly, the court of appeals addressed Benedict's Confrontation Clause argument and rejected it, reasoning that Benedict was able to cross-examine the witness at trial. Doc. 6-2, at 268. Benedict makes no argument that the court of appeals decision rejecting his Confrontation Clause argument was in error. *See* Doc. 10, at 18. He also didn't clearly include a Confrontation Clause argument in his petition. *See* Doc. 1, at 7 (discussing facts only related to the trial court's failure to hold a pretrial hearing). Rather, this argument appears for the first time in Benedict's Traverse. *See* Doc. 10, at 18. His Traverse is not an appropriate place, however, for Benedict to introduce new arguments. *See Tyler*, 416 F.3d at 504.

For all of the stated reasons, Benedict's Ground Two claim fails.

>   3.    *Ground Three is meritless.*

As his Ground Three, Benedict asserts that his trial counsel was ineffective based on failure to challenge an invalid search warrant. *See* Doc. 1, at 8. Specifically, Benedict claims that the affidavit supporting the search warrant didn't include probable cause to search electronics and didn't include a time frame for when the pertinent images existed. *Id.* He also argues that

the affiant didn't have appropriate experience or qualifications in area of child pornography. *Id*. But, in his Traverse, Benedict withdraws all but one of his Ground Three arguments. Doc. 10, at 19. The sole remaining argument that Benedict advances in support of his Ground Three claim is thus that his trial counsel was ineffective for failing to move to suppress a search warrant that was supported by an "unnecessarily broad" probable cause affidavit. Doc. 10, at 18–19.

A successful ineffective-assistance claim requires a petitioner to demonstrate that: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." *Jones v. Bradshaw*, 46 F.4th 459, 487–88 (6th Cir. 2022) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "The first prong is satisfied when a petitioner 'show[s] that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Jones*, 46 F.4th at 487 (quoting *Strickland*, 466 U.S. at 694). "The second prong is satisfied when the petitioner 'show[s] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Jones*, 46 F.4th at 487–88. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Jones*, 46 F.4th at 488 (quoting *Strickland*, 466 U.S. at 694). The combined effect of *Strickland* and 28 U.S.C. § 2254(d) is "'doubly deferential'" review. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). "When

2254(d) applies, the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105; *Foust v. Houk*, 655 F.3d 524, 533–34 (6th Cir. 2011). "Or, in more concrete terms, a federal court may grant relief only if *every* "'fairminded juris[t]'" would agree that *every* reasonable lawyer would have made a different decision." *Dunn v. Reeves*, 594 U.S. 731, 739–40 (2021) (quoting *Harrington*, 562 U.S. at 101).

Strickland commands that a court "must indulge [the] strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 689–690; *Pinholster*, 563 U.S. at 196 ("[t]he Court of Appeals was required not simply to 'give [the] attorneys the benefit of the doubt,' but to affirmatively entertain the range of possible 'reasons Pinholster's counsel may have had for proceeding as they did'") (citation omitted).

As noted, the single issue that Benedict raises in support of his Ground Three is that his trial counsel was ineffective for failing to file a motion to suppress a search warrant. Doc. 10, at 18–19. To this end, Benedict asserts that there is clearly established law, *Maryland v. Garrison*, 480 U.S. 79, 85 (1987), that establishes that search warrants must not be unnecessarily broad. *See* Doc, 10, at 19.

The initial problem with this argument is that he didn't raise it before the court of appeals. Instead, he said in three different ways that the affidavit

30

did not provide "any time frame": (1) "The Affidavit Failed to Provide A Time Frame Regarding the Photograph"; (2) "An affidavit that 'does not give any time frame for the events it describes fails, as a matter of law, to demonstrate probable cause, and a search warrant issued based solely on that affidavit is invalid,'"; and (3) "Here, the affidavit does not provide any time frame for when the alleged photograph was taken." Doc. 6-2, at 80 (citations omitted). And he backed up these assertions with citation to: *State v. Lee*, a case in which "the affidavit … was devoid of *any* temporal reference," 2008-Ohio-3157, 2008 WL 2553025, at *2–3 (Ohio Ct. App. 2008) (emphasis added); and *State v. Swearingen*, a case in which a court of appeals remarked, "[t]he facts in this case merely establish that on February 20, 1997, Detective Ross learned that his informant was claiming she had repeatedly used drugs with Swearingen. *When this happened, no one knows.*"  721 N.E.2d 1097, 1101 (Ohio Ct. App. 1999) (emphasis added).

Benedict then contradictorily said that the affidavit *did* contain a time frame—"over the past 'one to three years'"—before asserting that an issuing magistrate can only draw inferences from the facts set out in an affidavit. Doc. 6-2, at 81. And from there, with reference to *Swearingen*, he said that "[i]t was not reasonable for the magistrate to infer that the photograph was taken during one of the alleged 'sexual assaults' involving M.P." *Id.*

Faced with this presentation, the court of appeals cited the *Strickland* standard, *id*. at 270–71, and then addressed Benedict's repeated assertion that

31

the affidavit did not provide "any time frame," *id*. at 271–72. Because the affidavit *did* include a time frame, contrary to Benedict's assertion, the court of appeals rejected Benedict's argument as meritless. *Id*. at 272.

Benedict, however, ignores the court of appeals' decision and the manner in which he presented this argument to that court. In doing so, he provides no support for the argument he appears to make by his citation to *Garrison*: that his trial counsel was ineffective by not arguing the search warrant was unnecessarily broad. For instance, he does not claim that *Garrison* found a warrant unnecessarily broad under "materially indistinguishable" circumstances to his own or that the Supreme Court found trial counsel ineffective for failing to object under similar circumstances. *See Williams*, 529 U.S. at 412–13. Instead, he offers his opinion that the warrant was overbroad and asks the Court to agree. *See* Doc. 10, at 19. But this argument ignores 28 U.S.C. § 2254(d).

Further, even assuming that *Garrison* provides clearly established law on the issue of search warrant specificity, Benedict provides no argument regarding the court of appeals' decision rejecting his ineffective assistance claim. *See* Doc. 10, at 19. For instance, he does not argue that the court of appeals decision misapplied *Strickland* or any other standard when it considered whether trial counsel was ineffective for his failure to file a motion to suppress. Instead, Benedict attempts to litigate the merits of his underlying argument based on a new argument—that the warrant was overbroad. Doc.

32

10, at 19. But this court does not act as another layer of appellate review for claims rejected by the state courts, *see Linger*, 23 F. App'x at 252, particularly when the basis for a petitioner's argument was not raised before a state's courts.

Since Benedict has not shown the court of appeals' decision was contrary to or an unreasonable application of clearly established law, and has otherwise expressly waived the majority of his Ground Three arguments, this claim should be dismissed.

## Conclusion

For all of the reasons stated, I recommend that Benedict's petition be dismissed.

Dated: July 23, 2025

*/s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).